UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CATHERINE BANIGO,

                Plaintiff,

   - against-

BOARD OF EDUCATION OF ROOSEVELT
UNION FREE SCHOOL DISTRICT,
ROOSEVELT UNION FREE SCHOOL
DISTRICT, AND RONALD ROSS, As
Superintendent and Individually,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM & ORDER**
Civil Action No. 06-4792

**APPEARANCES:**

**O'REILLY, MARCH & CORTESELLI, P.C.**
Attorneys for Plaintiff
1000 Franklin Avenue, 3rd Floor
Garden City, New York 11530
By:    James G. Marsh, Esq.

**RUTHERFORD & CHRISTIE, LLP**
Attorneys for Defendants
369 Lexington, Avenue, 8th Floor
New York , New York 10017
By:    Jennifer H. Pymm, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Catherine Banigo ("Plaintiff" or "Banigo") commenced this action against defendants Board of Education of the Roosevelt Union Free School District, Roosevelt Union Free School District (collectively the "District') and Ronald Ross ("Ross") (the District and Ross are collectively referred to as  "Defendants") asserting claims for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; New York Executive Law § 296; procedural due process under the Fourteenth Amendment; violations of New York Education Law §§ 2510, 3012, and 3020-a; and tortious interference with contract. Presently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, the motion is granted as to the first through seventh causes of action. The eighth and ninth causes of action are dismissed without prejudice.

## Background

The following material facts are undisputed unless otherwise noted.

Banigo began teaching at the District's middle/senior high school in September 1987. She is certified to teach business education and received tenure in the district in the area of business education sometime in 1990. Banigo taught in the district until her position was abolished effective June 2005, resulting in her termination. Her birth date is April 22, 1947 and she was 58 years old at the time her position was abolished. During her time in the District, Banigo taught various classes including business math, accounting, keyboarding, word processing, electronic information processing, business law, introductions to occupations, financial literacy, business analysis, business computer applications and web page design. She taught web page design only one year, the 2001-2002 school year; it is not clear how many periods she taught that class that year. (*See* Banigo Dep. at 45 ("I'm not certain [ how many sections of web design I taught during that year] , I believe it was two.").) Web page design falls under the area of information or computer technology on the Basic Educational Data System

("BEDS") forms; it does not come within the ambit of business education on the BEDS forms.[1]

Plaintiff's was not the only position abolished effective June 2005. The District also abolished one position in guidance, one position in technology, and one position in reading, as well as another position in business education. (*See* Pymm Aff. Ex. J.)[2]

Prior to the abolishment of the two business education positions, there were three business education teachers in the District: Banigo, Ms. Varis and Ms. Carr. As a result of the abolishment of the two business education positions, Ms. Varis, approximately forty-five years old at the time, also lost her position. Ms. Carr, who was at the time approximately fifty-eight years old, had the most seniority and therefore stayed in the one remaining business education position. Following the abolishment of the two business education teachers in June 2005, the District has not hired any new business education teachers.

According to the Defendants, the elimination of positions effective June 2005 was due to a restructuring for reasons of economy and efficiency. Specifically, the elimination of the two

---

[1] Neither party explains in its submissions exactly what a "BEDS" form is or what purpose it serves. The Court unearthed the following discussion of BEDS forms in Plaintiff's deposition transcript which sheds some additional light on what these forms are:
Q:  Within a specific department, how is it determined which classes fell within, say, the business department versus the math or social studies department, how was that determined?
A:  The State determines.
Q:  Was that outlined anywhere?
A:  Yes, in the BEDS, you know what the BEDS are, the basic educational statistics.

Banigo Dep. at 42

[2] Under the New York Education Law if a position is abolished, the teacher with the least seniority within the tenure area of that position in the district must be the person dismissed, and the dismissed person must be placed on a preferred eligible list of candidates for appointment to a similar position for seven years. N.Y. Educ. Law §§ 2510(2) & (3)(a), 2585(3), 3013(2) & (3)(a).

business education positions was warranted, according to Defendants, because the department's classes were antiquated and not assisting the high school in changing its failing status. Ross planned on eliminating the entire department but could not do so in 2005 because there were high school students who needed certain business classes in order to complete a sequence, thereby enabling them to graduate.

Plaintiff maintains that the elimination of positions was motivated by a desire to replace older female teachers with younger male teachers.

Konate Lilas ("Lilas"), who is certified to teach social studies, began teaching in the District in 2004 as a member of the Social Studies department. Lilas' birthdate is May 28, 1973. He began his tenure in the District at the New Horizons School, the District's alternative school. For the 2005-2006 school year Lilas was assigned to the High School where he taught three web design classes, as well as video editing and social studies. No information is provided as to whether the web classes taught by Lilas in 2005-2006 and the web design class taught by Banigo four years earlier covered the same material. For the 2005-2006 school year Lilas was also appointed district webmaster, responsible for updating the District's website.

Plaintiff filed a complaint with the EEOC in December 2005. In July 2006, the District sent to all employees aged fifty-five or older who were eligible to retire (i.e. had ten or more years' teaching experience), a retirement incentive offer of thirty percent of their last year's salary and one hundred percent health care coverage if they would retire between July 10 and August 10, 2006. Plaintiff, although over the age of fifty-five and having more than ten years teaching experience in the District, did not receive this offer.

**Discussion**

I.  **Applicable Law and Legal Standards**

   A.  **Summary Judgment**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

5

*Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)). "Nor is a genuine issue created merely by presentation of assertions that are conclusory. . . . Rule 56(e) states that '[w]hen a motion for summary judgment is made and supported as provided in this rule . . . the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." *Patterson*, 375 F.3d at 219 (citations omitted) (brackets and emphasis in original).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997)

6

(citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.

1985).

## B. The McDonnell-Douglas Burden-Shifting Methodology

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII and ADEA employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-511 (1993).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappears, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola,* 42 F.3d at 716, or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530 U.S. at 143.

8

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. 2004). Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). A discrimination claimant may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bombero*

*v. Warner-Lambert Co.*, 142 F. Supp.2d 196, 203 n.7 (D. Conn. 2000) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), and citing *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)), *aff'd*, 9 Fed. Appx. 38 (2d Cir. 2001).

However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases." *Meiri*, 759 F.2d at 998.

## II. Plaintiff Fails to Raise a Genuine Issue of Material Fact as to Her Discrimination Claims

To establish a prima facie case of discrimination under either Title VII or the ADEA, a plaintiff must show that: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (Title VII); *Kassner v. 2nd Ave. Deli. Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (ADEA).[3] There is no question that the Plaintiff has established the first three elements. It is therefore to the fourth element that the Court turns.

A plaintiff may satisfy the fourth prong of a prima facie case of discrimination by demonstrating "the ultimate filling of the position with an individual who is not a member of the protected class." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001); *see also*

---

[3] The same standards apply to Plaintiff's claims of discrimination under the NYSHRL. *See Patane v. Clark*, 508 F.3d 116, 113 (2d Cir. 2007); *Kassner,* 496 F.3d at 238.

*Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) ("[T]he fact that [plaintiff] was replaced by a 31-year-old is sufficient to give rise to the inference that [plaintiff] was the victim of discrimination." In the present, case, however, the position from which Plaintiff was terminated, i.e., business education teacher, was not ultimately filled by a substantially younger male. It was not filled at all. Rather, some duties that were performed by Plaintiff for but one year, were distributed to Lilas, an existing employee. Thus, it is questionable whether the above principles apply. Nonetheless, for present purposes, the Court will presume Plaintiff has established a prima facie case of discrimination.

Once a plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Here, the District maintains that it abolished Plaintiff's position because of the financial condition of the District and its attempts to restructure a failing high school program. This claim, which is well supported by the record, clearly establishes Defendant's burden. *Cf. Farias,* 259 F.3d at 99 (evidence that position was eliminated because of loss of contract constituted a non-discriminatory ground sufficient to defeat prima facie case).

The District having articulated a legitimate, non-discriminatory reason for its action, Plaintiff has the burden of showing that the stated reason was pretextual and that more likely than not discrimination was a motivating factor for the adverse employment action. To satisfy that burden Plaintiff argues that "financial stability was never accomplished," pointing out that "[a]s of February 2008, a financial package was approved for [the District], which included: (a) $8 million to alleviate the budget deficit; (b) a $6 million annual increase in state aid to support academic improvements; and (c) a three-year extension of a $4 million annual aid increase."

Pl.'s Opp. Mem. at 10. However, that the District may not have accomplished its purpose does not undermine the integrity of the proffered reason. *Cf. Dister,* 859 F.2d at 1116 (evidence of poor business judgment on employer's part generally insufficient to establish genuine issue of fact as to employer's motivation).

Although not referenced in Plaintiff's memorandum, Plaintiff's affidavit raises two issues that must be addressed vis a vis a discriminatory motive. First, Plaintiff asserts that the "District, as well as Mr. Ross, has frequently expressed a desire to have young, male teachers on board to serve as role models." Second, according to Banigo, the District has terminated 11 teacher over the age of forty. (Banigo Aff. at ¶¶ 48-50.) The Court shall address these arguments seriatim.

With respect to the alleged desire to have young male teachers, the only evidence pointed to by Plaintiff to support that assertion is an article written by Ross. (*See* Banigo Aff. ¶ 49 and Ex. E thereto.) According to the article, Ross was superintendent of Mount Vernon (NY) Public Schools at the time of its publication. Thus, the article cannot be deemed to represent any opinion of the Roosevelt School District. Moreover, there is nothing in the article that would support a discriminatory animus. The article is entitled "Why We Need More African-American Teachers." Neither the title nor the content can be interpreted to express a preference for any gender. While the article does conclude with a "call on more young African Americans, especially if they are unclear about their career goals, to give at least five or 10 years at the start of their careers to teaching," it provides no support to infer a discriminatory animus against older teachers. Moreover, the article, which presumably is offered for its truth, is hearsay and thus not appropriately submitted in the present summary judgment context.

With respect to Banigo's assertion regarding eleven teacher over the age of forty being

12

terminated, the Court finds the evidence patently deficient. First, other than Banigo's assertion there is no evidence regarding the age of the identified teachers. More importantly, there is no evidence that the employees she refers to were similarly situated. Indeed, there is an absence of evidence regarding the total number of terminations, the time period during which the terminations occurred, and the circumstance of the terminations (e.g., were they tenured or untenured, terminated for cause or as a result of the elimination of their positions). In short, the mere conclusory assertion that eleven teachers over the age of forty were terminated is an insufficient basis for a trier of fact to conclude that the District's proffered reason was pretextual and that either age or sex discrimination was the true reason. *See Peres v. Oceanside UnionFree Sch.Dist.*, 2008 WL 305342, at *11 (E.D.N.Y. Jan. 31, 2008) (holding that in the absence of specific information concerning the over forty teachers whose co-curricular positions were not renewed, no triable issue of fact was created); *cf. Wyatt v. Zuckerman*, 2005 WL 525256, at *13 (S.D.N.Y. Mar. 7, 2005), *aff'd,* 240 Fed. Appx 885 (2d Cir. 2007).

Accordingly, Defendants' motion for summary judgment on Plaintiff's claims for age and sex discrimination under both federal and state law is granted.[4]

### III. Defendants are Entitled to Judgment on Plaintiff's Retaliation Claim

Title VII "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). "The ADEA

---

[4] The Court also notes that Plaintiff's Title VII and ADEA claims against Ross are dismissable on the additional ground that an individual defendant may not be held liable thereunder. *See, e.g., Patterson*, 375 F.3d at 221.

contains a nearly identical provision prohibiting retaliation for complaining of employment discrimination on the basis of age . . . and the same standards and burdens apply to claims under both statutes." *Id.* (citing 29 U.S.C. § 623(d)). Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).[5]

"In order to present a prima facie case of retaliation under Title VII [or the ADEA] . . . , a plaintiff must adduce 'evidence sufficient to permit a rational trier of fact to find [1] that she engaged in protected participation or opposition under Title VII [or the ADEA], [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.'" *Id.* at 205-206 (brackets in original) (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)). *See generally Viola,* 42 F.3d at 715 (ADEA claims follow the same analytical framework as Title VII cases).

Plaintiff's retaliation claims may be summarized as follows: As a result of being excessed, she was entitled, under the New York Education Law, to be placed on a preferred eligibility list for appointment to a similar position for seven years and to be offered regular substitute positions of at least five months duration. In January 2006, Plaintiff filed a complaint with the EEOC alleging discrimination in violation of Title VII and the ADEA. Subsequent to

---

[5] Retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII and the ADEA. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

the filing of her EEOC complaint, all other teachers in the District who were eligible to retire received a retirement incentive offer in July 2006. "Although she is on the Preferred Eligibility list, over fifty-five years of age, and had more than ten years' teaching experience at Roosevelt, she did not receive [the District's July 2006] offer of retirement or the offer to become a regular substitute teacher. The fact that Plaintiff did not receive these offers is evidence of retaliation by the District." (Pl.'s Mem. in Opp. at 13-14.)

Defendants' motion for summary judgment on Plaintiff's retaliation claims is granted. Plaintiff does not cite, and the Court is unaware of, any case law that supports the position that an excessed teacher remains an *employee* of the District. Indeed, in addressing a different issue, the New York Court of Appeals has noted that "an excessed teacher does not continue in the employ of the school district and has no continuing right to the payment of salary. The teacher has a right under section 2510(3) to be placed on a 'preferred eligible list of candidates for appointment to a vacancy,' but that right is limited and based on the happening of an uncertain future event." *Gross v. Bd. of Educ. of Elmsford U.F.S.D.*, 78 N.Y.2d 13, 18 (1991) (citations omitted). As a non-employee, Plaintiff cannot retire "from the District" and was not entitled to receive the offer of a retirement incentive. Nor has Plaintiff presented evidence that the District offered a retirement incentive to others who were on a preferred eligibility list but had not engaged in any protected activity. With respect to the absence of an offer to become a regular substitute, it is true that under §§ 2510 (3) and 3013(3) of the New York Education Law teachers on preferred eligibility lists must be offered regular substitute positions of at least five months duration. However, Plaintiff has failed to offer a scintilla of evidence that there have in fact been any such "regular substitute positions of at least five months duration" in the District while she

15

has remained on the preferred eligibility list. Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

### III. Plaintiff's Procedural Due Process Claim

Plaintiff alleges that she was deprived of procedural due process under the Fourteenth Amendment when she was excessed by reason of the elimination of her position without a hearing. For the reasons stated below, the motion for summary judgment is granted as to Plaintiff's claim under the Fourteenth Amendment.

The Due Process Clause imposes procedural safeguards on governmental decisions that deprive individuals of liberty or property interests, within the meaning of the Fifth or Fourteenth Amendments. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), *limitation of holding on other grounds recognized by*, *Hines v. Miller*, 318 F.3d 157 (2d Cir. 2003). Thus, to prevail on a procedural due process claim under the Fourteenth Amendment, a plaintiff must necessarily demonstrate that she was deprived of a protected property or liberty interest. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995).

It has been held that a public school teacher has a property interest in his or her tenure and cannot be fired without due process. *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 789 (2d Cir. 1999). The New York Court of Appeals has stated, however, that the concept of tenure in the teaching profession does not require a hearing when a teacher's services are terminated because of the abolishment of her position. *Mitchell v. Bd. of Educ. of the Great Neck Pub. Sch.*, 40 N.Y.2d 904, 905 (1976).

Plaintiff's citation to *DeSimone v. Bd. of Educ., So. Huntington U.F.S.D.*, 612 F. Supp. 1568, 1572 (E.D.N.Y. 1985) for the proposition that "the Due Process Clause of the Fourteenth

16

Amendment requires that a Board of Education provide a tenured teacher with a hearing before discontinuing such teacher's services under Education Law § 2510(2)" (Pl.'s Mem in Opp. at 15) is misplaced. In *DeSimone,* the school district abolished the position of high school dean and at the same time created the new position of high school administrative assistant. The plaintiff, having been terminated when his position of dean was eliminated sued contending that the two positions were similar and under Education Law § 2510(1) he had a right to the new position. The Court held that in view of § 2510(1), the school district knew or should have known that there was a substantial possibility that plaintiff might possess a substantive right to the new position and therefore the discontinuance of his services without a hearing on the issue of the similarity of the two positions violated his due process rights.

In this case, the District did not create a new position. As the New York Court of Appeals has stated:

> Faced with spiraling operating costs and ever increasing demands on their tax bases, school districts must have sufficient latitude within the law to manage their affairs efficiently and effectively. This implies, where appropriate, the power to consolidate and abolish positions for economic reasons. . . . Here the Board of Education abolished petitioner's position and transferred its duties to existing positions . . . within the district, action we find not inconsistent with petitioner's tenure rights. Had a new or part-time position been created to carry on the work formerly done by petitioner, a different question would be presented. . . . But such is not the case here. In accordance with the law (Education Law §§ 2510, 2585), petitioner was assigned preferred status entitling him to reinstatement should a vacancy occur within . . . in his former position or a similar one. Within the intendment of the law. his tenure rights have been adequately safeguarded.

*Young v. Bd. of Educ., Cent. Sch. Dist No. 6*, 35 N.Y.2d 31, 33 (1974) (citations omitted).

*Accord Gross,* 78 N.Y.2d at 15 ("School districts must have sufficient latitude within the law to

manage their affairs efficiently and effectively. . . .To this end, the legislature has recognized that school districts may need to abolish teaching positions for overriding fiscal reasons, even when doing so results in the discharge of tenured employees.") (citations omitted).

Given that no new position was created but rather Plaintiff's duties were transferred to an existing position, Plaintiff was not entitled to a due process hearing.

Defendants' motion for summary judgment on Banigo's due process claim is granted.

## IV. Plaintiff's State Law Claims are Dismissed Without Prejudice

Having found that Banigo's federal claims fail as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action. Although the Court has the discretion to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, i.e., tortious interference with contract (ninth cause of action) and violations of the New York State education law (eighth cause of action), it declines to do so as resolution of the state claims would require the determination of additional factual and legal issues. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *N.Y. Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) ( holding that dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where the resolution of the state law claims entails resolving additional legal and factual issues). "'Since [New York CPLR § 205] allows a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations,' plaintiff[] will not be prejudiced by the dismissal of [state law] claims." *Tishman v. The Associated Press,* 2007 U.S. Dist. LEXIS 85588, at *28-29 (S.D.N.Y. Nov. 19, 2007) (quoting *Trinidad v. N.Y. City Dept. of*

*Corr.*, 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006)) (alterations in original) (additional citations omitted).

Accordingly, Plaintiff's claims for tortious interference with contract and violations of New York State Education Law are dismissed without prejudice.

## Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is granted with respect to Plaintiff's first, second, third, fourth, fifth, sixth, and seventh causes of action and the eighth and ninth causes of action are dismissed without prejudice. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
      March 4, 2009

/s/
Denis R. Hurley
Senior District Judge